### Nachman Drosdoff, Defendant in Error, v. Henry Fetzer, Plaintiff in Error.

#### Gen. No. 17,189.

1. SALES—*misrepresentation.* Testimony which leaves a suspicion that defendant was not over scrupulous in "puffing" the value of the good-will in the sale of a store is not sufficient evidence to avoid the contract for misrepresentation.

2. SALES—*rescission by mutual consent.* Where defendant because of plaintiff's dissatisfaction retakes possession of a store which he had sold to plaintiff the day before, there is a rescission by mutual consent and defendant will be required to return the money received as part payment.

Error to the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed March 24, 1913.

ROBERT E. CANTWELL, for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The plaintiff in error, Henry Fetzer, before September 2, 1910, was the proprietor of a grocery store at 412 West Division street in Chicago. On that day he entered into an agreement with the defendant in error,

Nachman Drosdoff, the memorandum of which reduced to writing was introduced in evidence in this case in the court below. It reads as follows:

"Chicago, 9/2/10.

Received of Nachman Drosdoff check for $200.00 as part of the purchase price of all goods and fixtures and good will contained in store at 412 W. Division St., balance of $975 to be paid of Henry Fetzer on the condition that the lease can be transferred, also on the condition that said Henry Fetzer can not engage in the retail grocery business within a radius of 4 blocks square for 5 years. It is further agreed that Nachman Drosdoff will pay Henry Fetzer $200 on Sept. 6, 1910, to apply on the balance providing the lease has not been as yet transferred. Balance to be paid when the lease is transferred."

This paper, or the copy of it as it appears in the transcript of the record in this case, is not signed, but the testimony of Drosdoff is that it was signed by both parties.

Drosdoff took the store, he says, and "started to run the business." Twenty-three hours afterward he had discovered, he says, that representations made to him as to the amount of business done by the store, that is, in effect, the "good will," were false. He asked Fetzer to return him the two hundred dollars he had paid and take back the store. During this twenty-three hours he had sold goods to the amount of $19 (which amount he had received), and had bought goods and put them in stock to the amount of $29. In answer to questions put to him by his counsel in the trial below: "When did you surrender the store; when did you give it up?" Drosdoff answered: "On Saturday afternoon. * * * I had it about twenty-three hours, but I did not like it."

Fetzer testified that Drosdoff took the store on Friday afternoon and on Saturday morning met him and reported that Mrs. Drosdoff was dissatisfied with the store and that he wished to be let off his bargain. In answer to the question, "What happened?" Fetzer testified:

"Well, when I saw the man was dissatisfied I went over to see the landlord and I asked him, I says, 'We can't get the lease transferred until next week because the landlord is out of town.' I says that to Mr. Drosdoff at half past one on Saturday, and he says to me, 'I have destroyed the lease with my two hundred dollars on it; my wife is dissatisfied and she is always a-crying about it.' I says to him then, 'I am sorry for you, but you certainly had lots of time to look the store over and you stayed in there some three or four days and you should have decided at that time; it is too late now.' "

This testimony is not particularly clear, especially as to the "transfer of the lease;" and neither Drosdoff nor Fetzer said on the trial below anything further as to what became of the store and its contents after Drosdoff left it. But from the testimony of one Michael Scanlon, a clerk of Fetzer in the store in question, it would appear—although none too clearly—not only, as is conceded, that Fetzer took possession of the store on the "Saturday" in question, but also that he ran it for ten or twelve weeks and then closed it up and moved out the fixtures.

However that may be, it is evident from the preliminary affidavits and statements of the parties in the case at bar, that Drosdoff left the store and that Fetzer took possession of it again on that Saturday, but did not then or afterward return to Drosdoff the $200 he had received. Drosdoff therefore sued him in the Municipal Court of Chicago.

In his statement of claim Drosdoff alleges that he made the agreement heretofore mentioned to purchase the store, that he paid $200 as a part of the purchase price and took possession thereof. He then makes allegations concerning misrepresentations of the amount of business done by the store before the purchase, and proceeds:

"The plaintiff then surrendered the possession of said store to the said defendant, who received and accepted possession thereof, and wholly refused to

return to the plaintiff herein the said sum of Two Hundred Dollars.''

Fetzer thereupon entered his appearance and filed an affidavit of merits of defense, in which he admitted the agreement of purchase and sale and ''that in pursuance to said agreement the defendant accepted for plaintiff the sum of Two Hundred Dollars ($200) as a part of the purchase price thereof, and that the said plaintiff took possession of said store under said contract.'' The affidavit proceeds: ''Defendant further admits that he retook possession of said store at plaintiff's special instance and request.'' Then denying any misrepresentations, the affiant also denies that the plaintiff at any time before the filing of the suit requested the return of the two hundred dollars. The defendant also filed a claim in set-off, in which he sets up the sale for $1175, and then says:

''The receipt of two hundred dollars of said consideration is hereby acknowledged as having been received under said contract. Defendant further alleges that after plaintiff had occupied said store for a day he requested this defendant to retake possession thereof and that defendant hereto demanded of plaintiff the balance due under said contract, which plaintiff wholly refused to pay, and that defendant accepted possession of said store because he considered it absolutely necessary in order to protect the goods therein, and that he did not accept possession until plaintiff had abandoned or surrendered possession of same.''

The claim is then made for $975 damages against the plaintiff.

The court on the trial found the issues against the defendant, assessed the plaintiff's damages at $200 and entered judgment in his favor against the defendant for that amount. The defendant is by this writ of error endeavoring to reverse this judgment.

We think the judgment should be affirmed. There is no sufficient evidence of misrepresentation that would avoid the contract, although the testimony leaves

some suspicion of not over scrupulous "puffing" of the value of the good will sold.

But we should not consider the judgment justified if it had to rest upon this.

The statement of the matter, however, by the defendant himself in his affidavit of merits and in his counterclaim, borne out as it is also by the meagre evidence on the subject, shows what the law calls and makes a rescission of this contract by mutual consent, despite the attempt to put another aspect on it. In case of such rescissions the parties should be put by each other as nearly as possible in the "*statu quo ante,* etc.,*" and the law will compel a final adjustment to this end where only a part of it has been made.

The judgment is affirmed.

*Affirmed.*